

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARVIN GREEN,<br><br>*Defendant.* | Case No. 3:25-cr-142<br><br>18 U.S.C. § 1349<br>Conspiracy to Commit Health Care Fraud<br>(Count 1)<br><br>18 U.S.C. §§ 1028A and 2<br>Aggravated Identity Theft<br>(Count 2)<br><br>Forfeiture Allegation |

### CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### GENERAL ALLEGATIONS

Virginia Medicaid Mental Health Programs

1.  The Virginia Medicaid Program ("Medicaid"), a "health care benefit program" as defined by United States Code 18 U.S.C. § 24, provides medical assistance to individuals in Virginia who meet certain eligibility requirements. The United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare and Medicaid Services ("CMS"), and the Commonwealth of Virginia, Department of Medical Assistance Services ("DMAS") administer and supervise the administration of the Medicaid program in Virginia. The United States contributes approximately fifty-one percent of the cost to the Medicaid program.

2.  Individuals who receive benefits under Medicaid are commonly referred to as "beneficiaries" or "recipients."

3.  DMAS authorizes health care providers to render mental health counseling services under programs called Mental Health Skill Building ("MHSB") and Community Stabilization

1

("CS"), among other programs. MHSB is for individuals over 21 years old.

4. MHSB services are provided by a mental health counselor and focus on training related to the recipient's health and safety, including personal hygiene, communication skills, and stress management and coping skills; activities of daily living, including independent use of community resources such as public transportation; and medication management, including adherence to recommended medical care and attending medical appointments.

5. CS services provide short-term assessment, crisis intervention, and care coordination to individuals experiencing a behavioral health crisis.

6. MHSB and CS must be provided by either a Licensed Mental Health Professional ("LMHP") or a Qualified Mental Health Professional ("QMHP"). LMHPs possess an advanced license, such as a license to work as a clinical psychologist or clinical social worker. QMHPs possess a bachelor's degree and have a requisite level of training and experience providing behavioral health services.

7. All billing for MHSB and CS services must be supported by a comprehensive needs assessment and an individual service plan for the given recipient, as well as individualized progress notes for each billed claim. The mental health professional (either the LMHP or QMHP) who provided the services is responsible for drafting a progress note for each counseling session that results in a claim billed to Medicaid.

8. Progress notes must document the recipient's individual circumstances, treatment, and progress, as well as the individualized interventions the counselor provided. The progress notes must include the name of the service rendered, the date and time of the service, the signature and credentials of the rendering provider, and the setting in which the service was rendered.

### The Defendant and Live 4 Life

9. In or about 2015, the defendant, MARVIN GREEN ("GREEN"), began working for Live 4 Life, Inc. as a community outreach coordinator. Live 4 Life was in the business of providing mental health counseling services, and many of Live 4 Life's clients were Medicaid recipients. Live 4 Life was located in the Eastern District of Virginia (specifically, in the area of Richmond, Virginia), and the agency marketed its services to clients in central Virginia.

10. In or about 2016, GREEN was promoted to Director of Operations at Live 4 Life, and his responsibilities included staffing, finding community resources, building operation, and audits. GREEN left his employment with Live 4 Life in or about 2023.

11. At all times relevant to the Criminal Information and this Statement of Facts, GREEN also lived in the Richmond, Virginia area.

12. During various portions of GREEN's period of employment with Live 4 Life, GREEN was employed full-time at the Boys and Girls Club in the Richmond, Virginia area, and he also worked in various capacities for or was compensated by for seven other providers of mental health services for Medicaid recipients, all based in the Richmond, Virginia area.

### COUNT ONE
(Conspiracy to Commit Health Care Fraud)

13. The preceding allegations are incorporated herein.

14. From in or about March 2022, through in or about September 2023, in the Eastern District of Virginia, the defendant, MARVIN GREEN, knowingly and intentionally combined, conspired, confederated, and agreed with others known and unknown to commit offenses against the United States, to wit: Health Care Fraud, that is, to devise a scheme or artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money owned by, and under the custody and control of,

a health care benefit program as defined by Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

15. The object of the conspiracy was for GREEN and his co-conspirators to obtain health care benefit payments from the Virginia Medicaid Program to which the defendant and his co-conspirators were not entitled by submitting and causing to be submitted false and fraudulent billing claims to DMAS.

Ways, Manner, and Means of the Conspiracy

16. GREEN, in his role as Director of Operations for Live 4 Life, directed Live 4 Life employees to falsely create progress notes and submit billing to Medicaid for services that were not in fact rendered.

17. In one representative instance, GREEN directed Co-Conspirator 1 to submit progress notes for Patient A for MHSB and CS services that, in truth and in fact, Co-Conspirator 1 did not render. GREEN instructed Co-Conspirator 1 to write progress notes for Patient A as if Co-Conspirator 1 were providing services to Patient A, when in fact Co-Conspirator 1 never met Patient A, and did not provide any mental health services to Patient A. GREEN also told Co-Conspirator 1 how many hours to claim for pay purposes for providing services to Patient A, when in fact Co-Conspirator 1 could not truthfully claim any hours because Co-Conspirator 1 did not provide any mental health services to Patient A. GREEN knew, at the time that he issued these instructions to Co-Conspirator 1, that Co-Conspirator 1 had not rendered the services in question.

18. Patient A has never received any mental health services. Prior to speaking with investigators, Patient A had never heard of Live 4 Life.

19. The medical records that Live 4 Life, through its employees, completed for Patient

A included numerous false and incorrect statements, including the claims that Patient A had been diagnosed with major depressive disorder, anxious distress, attention-deficit/hyperactivity disorder, and general anxiety disorder; the claim that Patient A was prescribed particular medications to treat his mental health conditions; the claim that Patient A had difficulty with his reading comprehension; providing an incorrect birth date for Patient A; and many more. Where Patient A's signature supposedly appeared on the Live 4 Life records, a Live 4 Life employee forged Patient A's signature.

20. Patient A resides in the Richmond, Virginia area, and at the time that Co-Conspirator 1 wrote false progress notes at GREEN's direction, claiming to provide counseling services to Patient A, Patient A was in fact working in the field of physical security services, mainly for businesses. Patient A performed security work for GREEN at a homeless shelter in which GREEN was involved. GREEN informed Patient A that GREEN could get him a security job working for another mental health provider with which GREEN was also involved, so Patient A submitted a job application to GREEN that contained Patient A's name, date of birth, and Social Security number. Armed with this information, Live 4 Life could look up Patient A's Medicaid identification number. Soon after Patient A gave his personal identifying information to GREEN, Live 4 Life began billing Medicaid for mental health services that Co-Conspirator 1 was supposedly providing to Patient A, when in truth and fact, Live 4 Life never provided any mental health services to Patient A. Patient A never heard back from GREEN about the purported security position that GREEN had described when soliciting Patient A's personal identifying information.

21. Due to Patient A's work in the field of security, if Patient A in fact suffered from the nature and extent of the mental health problems that Life 4 Life fraudulently claimed in the false medical records the conspirators created for Patient A, those purported diagnoses and

5

medications would have jeopardized Patient A's ability to carry a firearm, and thus his ability to work in the field of physical security.

22. Patient A received a letter in late 2023 from Sentara Health advising Patient A that Sentara believed his Medicaid number and personal information were being misused.

23. When GREEN directed Co-Conspirator 1 to draft and submit progress notes for Patient A, GREEN knew full well that the services described in the progress notes were never rendered and that Live 4 Life would use the progress notes and Patient A's personal identifying information to bill Medicaid for these non-existent services. The false Live 4 Life documents used for clinical (to include progress notes and individualized service plans) and billing purposes contained Patient A's name, signature, date of birth, Social Security number, and Medicaid identification number.

24. Co-Conspirator 1 submitted approximately 150 progress notes purporting to reflect that Co-Conspirator 1 had provided MHSB and CS services to Patient A. Co-Conspirator 1 claimed to have provided a total of approximately 490 hours of MHSB and CS services to Patient A. In truth and in fact, Patient A did not request, require, or receive mental health or counseling services, and Patient A had never heard of the company Live 4 Life. Patient A did not know who Co-Conspirator 1 was and has never met Co-Conspirator 1 for mental health counseling services.

25. Live 4 Life submitted $90,812.10 in false billing to Medicaid for Patient A from March 2022 to September 2023, and received $79,857.44 to which it was not entitled. This loss was reasonably foreseeable to GREEN.

(In violation of Title 18, United States Code, Section 1349.)

## COUNT TWO
(Aggravated Identity Theft)

26. The allegations of Paragraphs 1 through 25 are incorporated herein.

27. On or about March 16, 2022, in the Eastern District of Virginia, the defendant, GREEN, knowingly transferred, possessed, and utilized, without lawful authority, a means of identification of another person—that is, Patient A's name, signature, date of birth, Social Security number, and Medicaid identification number—knowing that Patient A was in fact an actual person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, the conspiracy to commit health care fraud described above, in violation of Title 18, United States Code, Section 1349.

(In violation of Title 18, United States Code, Sections 1028A and 2.)

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) Fed. R. Crim. P., the defendant is hereby notified that upon the conviction of the offense listed in Count One of this Criminal Information, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

Property subject to forfeiture includes, but is not limited to:

> The sum of at least $79,857.44, which represents the amount of proceeds the offenses charged in Count One, which sum shall be reduced to a money judgment against the defendant in favor of the United States.

If property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In accordance with Title 18, United States Code, Section 982(a)(7) and Title 21, United States Code, Section 853(p)).

Respectfully submitted,

Lindsey Halligan
United States Attorney

Date: September 29, 2025    By: _____
Robert S. Day
Assistant United States Attorney

By: _____
Shea M. Gibbons
Assistant United States Attorney